IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:21-cv-00415-JPG |
| | ) | |
| JAMES HODGE d/b/a RIVERBEND TREE SERVICE and BAILEY WATSON, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | **Consolidated with**: |
| BAILEY WATSON, | ) ) | |
| | ) | |
| | ) | |
| JAMES HODGE, d/b/a RIVERBEND TREE SERVICE, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:21-cv-01259-JPG |
| | ) | |
| vs. | ) | |
| | ) | |
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Garnishee. | ) | |

**MEMORANDUM AND ORDER**

I.    **Introduction**

This matter comes before the Court on cross motions for summary judgment. (Docs. 49,

75). On June 20, 2022, Atain Specialty Insurance Company ("Atain") moved for summary

judgment while certain motions were pending, including a motion to intervene by Angela Clontz,

Community and Family Affinity Services, Equity Insurance Group, Lewis & Clark Insurance

Agency ("Intervenors"), motion to re-align the parties and motion to remand. The Memorandum

and Order issuing decisions on those motions is at Doc. 60. Afterwards, Bailey Watson

("Watson") filed a motion to extend discovery deadlines because the scheduling and discovery order was issued before Watson was served and discovery had not been conducted in light of the pending motions. The Court granted the request, allowed the parties to engage in limited discovery, and provided additional time to file supplemental briefs, responses or cross motions for summary judgments. Atain's initial motion for summary judgment is at Doc. 49. Watson's responses in opposition to Atain's summary judgment motion are at Docs. 56, 74, and 77. Intervenors' responses in opposition are at Docs. 70 and 76. Atain's replies are at Docs. 49, 71, and 80. Watson filed a cross motion for summary judgment, and Atain opposes that motion. (Doc. 78, 79).

## II.     Background

### a.  Policy

James Hodge ("Hodge") operated a tree removal and trimming business known as Riverbend Tree Service ("Riverbend") at the time of the incident. Atain insured Hodge between April 20, 2020, and April 20, 2021. Atain insured Hodge d/b/a Riverbend under a policy ("Policy") which provided for Commercial General Liability ("CGL") and Errors and Omissions ("E&O") coverage. The Policy includes an "auto exclusion."

**The E&O coverage includes:**

**SECTION I – COVERAGE**

1.     Insuring Agreement

     a.     We will pay those sums that the insured becomes legally obligated to pay as "damages" as a result of an "error or omission" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". **However, we will have no duty to defend the insured against any "suit" seeking "damages" for an "error or omission" to which this insurance does not apply. …**

2.     Exclusions

This insurance does **not** apply to:

     c.     **Injury arising out of the ownership, maintenance, use or entrustment to others of any**

aircraft, "**auto**", or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". …

**SECTION – VI DEFINITIONS**

1.      "Auto" means a land motor vehicle, trailer or semi-trailer designated for travel on public roads, including any attached machinery or equipment.

## The CGL coverage policy includes:

**SECTION I – COVERAGES**
**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      Insuring Agreement

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

2.      Exclusions

   This insurance does not apply to:

   h.   Mobile Equipment

      "Bodily injury" or "property damage" arising out of:

      (1)   The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured ….

**COVERAGE C – MEDICAL PAYMENTS**

1.      Insuring Agreement

   a.   We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1)   On premises you own or rent;
      (2)   On ways next to premises you own or rent; or
      (3)    Because of your operations;

2.      Exclusions…

   We will not pay expenses for "bodily injury" …

      g.   **Coverage A Exclusions**

Excluded under Coverage A. …

**SECTION V – DEFINITIONS…**

2.      "Auto" means:

      a.   **A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or**

  **b.**  **Any other land vehicle that is subject to a compulsory or financial**
    **responsibility law or other motor vehicle insurance law where it is**
    **licensed or principally garaged.**

 3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death
    resulting from any of these at any time. …

Additionally, an amendment of the policy, amends the definition of "auto" as the following:

  **SECTION I —COVERAGES, COVERAGE A BODILY INJURY AND**
  **PROPERTY DAMAGE LIABILITY, 2. Exclusions, paragraph (g.) Aircraft,**
  **Auto Or Watercraft** is deleted and replaced with the following:

  g. Aircraft, Auto Or Watercraft

  This insurance does **not** apply to:

    (1)   "Bodily injury" or "property damage "arising out of or in connection with
      any aircraft or watercraft unless as outlined below;
    (2)   **"Bodily injury" or "property damage" arising out of or in connection with any "auto"**
      **unless as outlined below**; or
    (3)   "Bodily injury" or "property damage" arising out of or in connection with the `loading or
      unloading' of any aircraft, "auto" or watercraft by any insured unless as outlined below.

  This exclusion applies to 'bodily injury" or "property damage" arising out of any
  aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented,
  leased, hired, loaned, borrowed or entrusted to others or provided to another by
  any insured.

  This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision,
  hiring, employment, entrustment, permitting, training or monitoring of others by an insured.

  This exclusion applies even if the claims against any insured allege direct or
  vicarious liability. …

There also is an exclusion for the "auto" exclusion.

  This exclusion does not apply to:
        * * *
  (5) "Bodily injury" or "property damage" arising out of:

    (a)   The **operation** of machinery or equipment that is attached to, or part of, a land
      vehicle that would qualify under the definition of "mobile equipment" if it were
      not subject to a compulsory or financial responsibility law or other motor vehicle
      insurance law in the state where it is licensed or principally garaged; or

  **b. Factual Background**

    On August 22, 2020, Watson was injured when struck by a commercial woodchipper that

was pulled behind a dump truck operated by Hodge d/b/a Riverbend. Watson alleged her injuries

occurred due to the negligence of Hodge in the course of his business as Riverbend and filed suit

against Hodge on March 17, 2021 ("Underlying Lawsuit"). Watson alleged in the Underlying Lawsuit that Hodge was driving his "1986 Ford F-150 truck with woodchipper attached" and while Hodge was in the process of "leaving property located at 27562 East Bluff Lane…to dump a load of tree limbs, tree trunks and other tree removal by-product due to his work efforts." (Doc. 49, Ex. A ¶ 5). Watson further alleged that she was a "pedestrian walking near the defendant's vehicle when the defendant's truck and/or woodchipper struck her, knocked her to the ground and traversed over her body." *Id.* at ¶ 6.

Atain received the notice of Watson's claim on February 4, 2021. Counsel for Watson, Mr. Larry Darr, informed Atain that Watson was injured when "struck by your insured's truck towing tree cutting equipment." (Doc. 49 at ¶15). On April 26, 2021, in response to a dispute regarding insurance coverage for the Underlying Lawsuit filed by Watson against Hodge, Atain filed a declaratory judgment action seeking a declaration it has no duty to defend or indemnify Hodge d/b/a Riverbend for the Underlying Lawsuit (Case No. 21-415-JPG, Doc. 1). Atain disclaims coverage for the Underlying Lawsuit based on a policy's auto exclusion.

Hodge defaulted in the Underlying Lawsuit and a judgment was entered against Hodge on August 6, 2021, in the amount of $6,699,971.00. Post-judgment, Watson filed a citation to discover assets of Hodge. As a part of the citation proceeding, Hodge was ordered to execute an assignment of all his causes of action against Intervenors regarding liability they may share as a result of procuring, brokering, and placing insurance for Hodge's business interest. On March 11, 2022, Watson filed this separate lawsuit against the Intervenors, Hodge d/b/a Riverbend's insurance agents and others in Madison County Circuit Court ("Agency Lawsuit"). Atain nor Riverbend are named parties to the Agency Lawsuit.[1]

---

[1] Watson states the purpose of this suit in state court is to determine Lewis & Clark Insurance Agency, Equity Insurance Group, Angela Clontz and Burns & Wilcox's roles in "procuring insurance for Hodge's tree cutting

After the declaratory judgment action was filed, Watson filed a garnishment action to collect insurance proceeds against Atain, which was removed to the Southern District of Illinois on September 13, 2021. This Court consolidated the garnishment proceeding and the declaratory judgment action. (Doc. 37). The Court subsequently granted the motion to re-align the parties,[2] denied the motion to remand, and denied the motion to dismiss or stay federal court proceedings in light of the Agency Lawsuit.

The Court allowed the parties time to engage in limited discovery. During this time Sally Rock, Atain's insurance claims adjuster assigned to handle the claim for coverage, was deposed. (Doc. 76 at Ex. A). Sally Rock testified that the woodchipper being pulled by the truck meant that the woodchipper was in "operation." (Doc. 78, Ex. A). Watson was also deposed. (Doc. 77 at Ex. A). Watson testified that before the incident in question, she was a passenger in the truck when Hodge drove her to a restaurant.  (Doc. 77 at ¶ 31). Hodge was in the process of "leaving to go dump a load of wood and chips in the back of the truck" to haul the load to a dump site in Missouri. *Id*. at ¶ 30-33). Watson testified the woodchipper was not running or in use. *Id*. at ¶ 35.

After allowing the parties additional time to file and supplement motions for summary judgment, the Court addresses these motions now.

### III.    Analysis

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins*., 910 F.3d 996, 998 (7th Cir. 2018). The Court views the evidence and draws all reasonable inferences in the nonmoving party's favor. *Cervantes v. Ardagh Grp*., 914 F.3d 560, 564 (7th Cir. 2019). If the nonmoving party fails to establish the existence of an element essential

---

business that (allegedly) contained exclusions for his regular and foreseeable activities." (Doc. 39 at 3).
[2] The Court re-aligned Hodge d/b/a Riverbend as a plaintiff instead of a defendant in the garnishment action.

to its case on which it would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Id*. "Material facts" are those that "might affect the outcome of the suit," and a "genuine dispute" exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court is required to consider the materials cited by the parties, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant, *Grant v. Tr. of Ind. Univ*., 870 F.3d 562, 573-74 (7th Cir. 2017).

In diversity cases, such as this one, federal courts apply state substantive law. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co*., 796 F.3d 717, 723 (7ᵗʰ Cir. 2015).  Issues regarding the interpretation of an insurance policy are substantive. *Id*. Because neither party disputes that Illinois substantive law applies, the Court applies Illinois law. *See Med. Protective Co. of Fort Wayne, Ind. V. Am. Int'l Specialty Lines Ins. Co*., 911 F.3d 438, 445 (7ᵗʰ Cir. 2018) ("When sitting in diversity, we apply state substantive law. We will not address a conflict of law issue unless there is a dispute as to which state's law applies. If neither party disputes the issue, we will apply the law of the state in which the federal court sits.") (internal citations omitted). Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false, or fraudulent. *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co*., 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092, 1098 (2005).

To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the complaint to the relevant provisions of the insurance policy. *Id*. If there is no duty to defend, there is necessarily no duty to indemnify. *National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010). The primary issues on the parties' cross motions

for summary judgment involve the interpretation of the terms of an insurance policy. Construction of an insurance policy is typically a question of law appropriately decided on summary judgment. *Twenhafel v. State Auto Prop. & Cas. Ins. Co*., 581 F.3d 625, 628 (7th Cir. 2009).

An insurance policy is a contract, and the rules governing interpretation of contracts govern the interpretation of insurance policies. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). In interpreting an insurance policy, the Court must attempt to effectuate the parties' intention as expressed by the policy. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307, 314 (2006). If the terms of an insurance policy are clear and unambiguous, a court gives those terms their plain meaning and applies the policy as it is written. *Berrey v. Travelers Indem. Co. of Am*., 770 F.3d 591, 595 (7th Cir. 2014); *Medina*, 645 F.3d at 933.

If, on the other hand, a policy term that limits an insurer's liability is ambiguous—in other words, susceptible of more than one reasonable interpretation—the term is liberally construed in favor of coverage and in favor of the insured. *Medina*, 645 F.3d at 933. "[I]f the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010) (internal quotation and citation omitted). However, a policy provision is not ambiguous solely because the parties disagree about its interpretation. *Founders Ins. Co. v. Munoz*, 930 N.E. 2d 999, 1004 (Ill. 2010). Generally, the insured bears the burden of proving the claim is covered under a policy's grant of coverage, and the insurer bears the burden of proving an exclusion applies. *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 328 Ill.Dec. 858, 905 N.E.2d 747, 752 (2009).

If coverage applies, then the Court "next examine[s] the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed

against the insurer if their effect is uncertain." *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729, 738 (N.D. Ill. 2021), motion to certify appeal denied, No. 20 C 02005, 2021 WL 2433666 (N.D. Ill. June 15, 2021).

### a. Motion for Oral Argument

Watson requested an oral argument to verbally present its arguments on the matter. No other parties have filed any brief in support or in opposition and the time for doing so has passed. Oral argument is unnecessary if the Court has "received sufficient briefing on these issues." *Fields v. Alcon Lab'ys, Inc.*, No. 313-cv-00197-DRH-DGW, 2014 WL 1041191, at *1 (S.D. Ill. Mar. 18, 2014). The Court reviewed all the briefs, including the initial motion for summary judgment, the memoranda in support of, the responses in opposition by Intervenors and Watson, and replies in support of the motion. Additionally, this Court allowed for supplemental briefing whereby the parties filed memoranda in opposition, reply briefs, and Watson filed a cross motion for summary judgment, which Atain filed an opposition to. Regarding the pending cross-summary judgment motions, there are eleven (11) briefs in total. The Court believes that the oral argument is unnecessary because these issues have been sufficiently briefed and an oral argument for these issues cannot add anything that has not already been briefed or had the opportunity to be briefed by the parties. The Court, having this matter under advisement, will rule on the pending motions based on the briefing submitted by the parties. The Court hereby **DENIES** Watson's Motion for Order to Hear Oral Argument (Doc. 78).

### b. Atain's Motion for Summary Judgment

The Court first addresses Atain's motion for summary judgment. Atain argues the Policy's E&O coverage provides for an "auto" exclusion and therefore coverage does not apply. (Doc. 49 at 14). The Policy's E&O policy defines an "auto" as a "land motor vehicle, trailer or

semitrailer designed for travel on public roads, including any attached machinery or equipment."

Atain argues that the underlying Watson complaint alleges at the time of the accident Hodge was "driving his 1986 Ford F-150 truck with woodchipper attached" and Hodge was leaving the property to "dump a load of tree limbs, tree trunks and other tree removal by-product due to his work efforts." (Doc. 49, Ex. A at ¶ 5). Even though Hodge d/b/a Riverbend defaulted in the Underlying Lawsuit, Court deems those allegations as "actually litigated" in this action. *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001), aff'd, 32 F. App'x 158 (7th Cir. 2002) ("The issues underlying the New York default judgment were "actually litigated" for purposes of the collateral estoppel doctrine.").

Atain argues Hodge had been operating the truck on public loads, was attempting to leave his residence to operate the truck on public roads when the accident occurred, and therefore Hodge was operating an "auto." Watson has a different perspective on the issue. She argues Hodge was performing the work of a professional tree removal service and not that of an "auto" and therefore the "mobile equipment" exclusion to the "auto" exclusion applies.

The central question before this Court is the following: was this auto/woodchipper in operation when Watson was injured? If the auto/woodchipper was not in operation, this is an "auto" subject to the "auto" exclusion, and there is no coverage. If the woodchipper was in operation during the accident, this is a "mobile equipment" functioning as an exclusion to the "auto" exclusion.

First, the Court addresses whether the "auto" exclusion applies. Under the E&O policy, an "auto" is a "land motor vehicle, trailer or semi-trailer designated for travel on public roads, including any attached machinery or equipment." Under the CGL policy, an auto is defined as either "land motor vehicle, trailer or semitrailer designed for travel on public roads, including

any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." There is no question that the "auto" exclusion applies under the definition in the E&O policy and the CGL policy. The truck here is a land motor vehicle that was designed to travel on public roads. Under both, the "auto" exclusion applies. However, as stated previously, there is an exclusion to the "auto" exclusion if the bodily injury arose out of "[t]he *operation* of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment" if it were not subject to vehicle insurance.

Therefore, the issue before this case is whether Watson's injuries arose out of the operation of the woodchipper that was attached to Hodge's vehicle. If so, the exclusion to the "auto" exclusion applies, and coverage applies. However, based on the undisputed facts, the woodchipper was not in operation during the accident. Both parties agree that "operation" is not defined in the Policy. The Court cannot find any cases within this circuit that apply Illinois law or in Illinois that define "operation." Intervenors requests this Court look to the common dictionary definition of "operation" which defines it as "the fact or condition of functioning or being active." *See* Google search result for "operation." https://www.google.com/search?q=operation+meaning&rlz=1C1GCEU_enUS999US999&oq=&aqs=chrome.0.35i39i362l8.1014416560j0j15&sourceid=chrome&ie=UTF-8 (last visited January 31, 2023). Intervenors also posit "a doing or performing esp. of action" as another definition. *Webster's Third New International Dictionary 1581* (Merriam-Webster 1993). Even with these definitions, it is a stretch to see how passively attached equipment is considered in "operation." Hodge was driving his truck with the woodchipper attached when Watson was injured. The woodchipper was not being actively used, running, or otherwise turned on during the instant accident. *See generally* (Doc. 71 at 3-4).

The undisputed facts indicate the woodchipper was not in operation. Watson alleged in the Underlying Lawsuit, which Hodge defaulted in, at the time of the accident Hodge was driving his "1986 Ford F-150 truck with woodchipper attached" and while Hodge was in the process of "leaving property located at 27562 East Bluff Lane…to dump a load of tree limbs, tree trunks and other tree removal by-product due to his work efforts." Watson's testimony conducted during discovery also buttresses that the woodchipper was not in use during the instant accident, was not turned on, and was passively hauled when the truck ran her over. Intervenors and Watson point to the testimony of Sally Rock, who testified that because the woodchipper was being pulled by the truck, it was in operation. (Doc. 76 at 4). Atain argues it is irrelevant what the adjustor believed when interpreting the policy, because what matters is whether the interpretation is an "objectively reasonable." The Court agrees. *Hartford Fire Ins. Co. v. Aaron Indus., Inc*., No. 18-cv-4123, 2020 WL 91991, at *8 (N.D. Ill. Jan. 8, 2020) ("At least for purposes of interpreting the policy, it is irrelevant what one of Hartford's adjustors believed the term 'sales customer' meant because what matters during the interpretation of a written agreement is whether the interpretation Hartford advances is an objectively reasonable one."). The Court does not find Sally Rock interpretation of "operation" relevant because the Court looks to the facts, as well as insurance construction and interpretation to determine whether the woodchipper was in "operation." There are no allegations that the woodchipper was actively involved in the accident. The record instead shows it was passively hauled by the truck. Therefore, the woodchipper was not in operation at the time of the accident.

The Eleventh Circuit Court of Appeals issued an opinion on a similar operation exclusion. In *Rakestraw v. Southern Guar. Ins. Co. of Georgia*, the appellate court reviewed a district court opinion that concluded the policy excluded injuries from its coverage. 262 F. App'x

180, 182 (11th Cir. 2008). In this accident, Rakestraw was injured when a pickup truck, with a permanently attached fuel tank, air compressor and toolbox, was on his way to pick up a piece of equipment. *Id*. at 181. The appellate court disagreed with Rakestraw's argument that transportation of the air compressor constituted its "operation" and the term "operation" was ambiguous. The court held that because Rakestraw's injuries arose from the use of an "auto," they were excluded from coverage from the policy. *Id*. at Additionally, the court held the "injuries did not arise from the operation of the air compressor, the exception to the auto exclusion did not apply." *Id*. The appellate court held the "transportation of the air compressor" did not constitute its "operation." *Id*. The Court finds this case analogous. In short, just because the woodchipper was passively attached to the truck or being transported by the truck, does not mean it was in "operation" subject to the mobile equipment exclusion to the "auto" exclusion. The term "operation" is not ambiguous.

Watson argues that "Hodge was obviously purchasing a policy to insure the potential liabilities inherent to his tree removal business." (Doc. 56 at 11). Watson argues that this Court must provide deference to the "reasonable expectations" of the policy holder. The Court agrees, but the Court will not hold the expectation of the policyholder trumps clear language of the policy. *Mercury Indem. Co. of Illinois v. Kim*, 358 Ill. App. 3d 1, 13, 830 N.E.2d 603, 613 n.3 (2005). Illinois courts have been clear that where the policy language is clear and unambiguous, expectations for policy holder could be presented as unreasonable. *Luechtefeld v. Allstate Insurance Co*., 167 Ill.2d 148, 158, 212 Ill.Dec. 224, 656 N.E.2d 1058 (1995) ("We do not agree with the plaintiff's suggestion that payment of a premium will in all cases create a reasonable expectation in the insured that he will receive the full amount of coverage even where there is clear language in the policy excluding such coverage").

The Court is confined to the interpretation of contract law, and based on those principles, the Policy is unambiguous. Specifically, if the policy is clear and unambiguous, the Court must give the terms their plain meaning and apply the policy as it is written. *Berrey*, 770 F.3d at 595; *Medina*, 645 F.3d at 933. Here, the Court finds the Policy is clear and unambiguous and therefore cannot create ambiguity where there is none. *Founders Ins. Co. v. Munoz*, 930 N.E. 2d 999, 1004 (Ill. 2010). The Court agrees with Atain that the Court must give full effect to the policy, and the "mobile equipment" exclusion operates in harmony with the "auto" exclusion. Had Watson been injured while the woodchipper was in operation or as a result of the woodchipper, there would be a different result. Based on the terms of the contract, it is clear that Atain's Policy would cover injuries when the woodchipper were in operation, and not when the auto/woodchipper was traveling on public roads functioning as an "auto." *See e.g., Mid–Continent Cas. Co. v. Advantage Med. Elecs., LLC*, 196 So.3d 238, 245 (2015) (the purpose of an auto exclusion in a CGL policy "is to proscribe coverage for liability that should more properly fall under an automobile-liability policy"); *see, e.g., BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 839 (2005) (refusing to read auto exclusion so that it would "unilaterally convert a general liability policy—without motor vehicle coverage—into a [sic] automotive liability policy").

Watson and Intervenors urge this Court look to the case recently decided by this Court on June 24, 2022, and issue similar decision denying the insurance company's finding no coverage exists. *Artisan & Truckers Cas. Co. v. Burlington Ins. Co.*, 3:21-cv-497-JPG, 2022 WL 2291708 (S.D. Ill. June 24, 2022). In *Burlington*, this Court evaluated cross motions for judgment on the pleadings where plaintiffs were injured by roof trusses operating a crane, attached to a truck. The Court denied Burlington's motion and held an "operation" exception to the "auto" exclusion to

coverage applied because Plaintiffs were injured when the crane was in operation. Whereas in *Burlington*, plaintiffs were injured while the crane was in use to lift roof trusses into position for installation, the record is clear that Watson was not injured by the woodchipper was in operation. *Burlington* is distinguishable from this case.

Watson also argues that her claim of inadequate staffing in her Underlying Complaint must be covered because those claims are independent of the operation of the truck and woodchipper. (Doc. 74 at 16). This argument fails because Watson's negligence claims of inadequate staffing are not independent of and are inextricably linked with the use of the truck. Illinois courts, as well as cases decided by this Court have held that other negligence claims that are "not independent of, but inextricably linked with, the employer's use of the truck" are excluded from coverage. *Oakley Transp., Inc. v. Zurich Ins. Co.,* 271 Ill.App.3d 716, 208 Ill.Dec. 177, 648 N.E.2d 1099, 1107 (1995); *Nautilus Ins. Co. v. 1452–4 N. Milwaukee Avenue, LLC*, 562 F.3d 818 (7th Cir. 2009) (automobile exclusion precluded coverage because the "[plaintiffs]' complaints failed to allege that the injuries arose from events wholly independent of any negligent operation of the bus."). Here, the claims of inadequate staffing arise from, and are inextricably linked to the use of the "auto." Additionally, pursuant to the Policy, the "auto" exclusion "applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, entrustment, permitting, training or monitoring of others by an insured." Therefore, Watson's inadequate staffing claims are excluded from coverage under the "auto" exclusion.

Additionally, Watson and Intervenors argue that Coverage C to the Policy provide coverage for medical expenses for bodily injuries on premises that Hodge would own or rent. (Doc. 70 at 10). However, the medical coverage section in the Policy incorporates all the

exclusions under Coverage A, which includes the "auto" and mobile equipment exclusions. Therefore, for all the reasons set forth by this Court above, Coverage C does not apply to Watson's injuries in this case.

Based on the unambiguous language from the Policy as a whole, the parties intended the Policy not to cover injuries resulting from Hodge utilizing the truck and attached woodchipper as a truck driving on public roads, but did intend to cover bodily injuries when woodchipper was in use and operation. Accordingly, Atain has no duty to defend or indemnify Watson in the underlying action. An insurer's duty to defend is broader than its duty to indemnify. *Lyerla v. AMCO Ins. Co*., 536 F.3d 684, 688 (7th Cir. 2008). Therefore, because the Court finds Atain has no duty to defend under the Policy issued to Hodge for the damages and injuries related to the subject accident in the Underlying Lawsuit, and because the duty to indemnify is triggered only in circumstances of actual coverage, Atain also has no duty to indemnify.

### c. Watson's Motion for Summary Judgment

Watson, as Plaintiff and garnishor, also moves this Court for summary judgment (Doc. 75). As stated previously, this Court consolidated Watson's garnishment action with declaratory judgment action. Watson argues that the Court should deny Atain's motion, and a finding that Atain breached its duty to defend Hodge means Watson should prevail on her garnishment action. Specifically, Watson argues pursuant to her motions in opposition of Atain's, Watson requests a grant of summary judgment as to her nonwage garnishment allowing for pre and post judgment interest on the entire judgment of $6,699,598.52 (as of December 31, 2022). Atain argues that it filed a declaratory judgment action contemporaneously with its denial of coverage on April 26, 2021 and April 27, 2021, respectively.

Atain did not breach its duty to defend because it sought a declaratory judgment that

there was no coverage. Under Illinois law, insurers have two avenues uncertain of its obligations under a policy. Insurers may "defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage…. If a court later finds that the insurer breached its duty to defend, the insurer will be estopped from asserting policy defenses to coverage. *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017) (applying Illinois law). Here, because the Court finds that Atain has no duty to defend or indemnify Hodge in the Underlying Lawsuit judgment, Watson is not entitled to pre or post judgment interest on the judgment and Atain did not breach its duty to defend.

Watson's garnishment action in this case sought recovery of Atain's assets in the form of the insurance policy issued to Riverbend to satisfy the judgment that was entered against Riverbend in the Underlying Lawsuit. Because the Court has determined Atain has no duty to defend or indemnify Hodge d/b/a Riverbend in the Underlying Lawsuit, the Court will dismiss the garnishment action (*Bailey Watson and James Hodge d/b/a Riverbend Tree Service v. Atain Specialty Insurance*, Case No. 21-1259). *See also McRoberts v. Adams*, 60 Ill.2d 458, 464, 328 N.E.2d 321 (1975) (dismissing garnishment action by judgment creditor against insurance company after determining that no coverage was provided by the company to the putative insured for the incident in question).

IV.   **Conclusion**

The Court hereby:

- **DENIES** Watson's Motion for Oral Argument (Doc. 78);

- **DENIES** Watson's Motion for Summary Judgment as to Atain's Specialty Insurance Company's breach of the duty to defend and in support of her nonwage garnishment (Doc. 75);

- **GRANTS** Atain's Motion for Summary Judgment (Doc. 49);

- **DISMISSES WITH PREJUDICE** the garnishment action *Bailey Watson and James Hodge d/b/a Riverbend Tree Service v. Atain Specialty Insurance Company*;

- **DIRECTS** the Clerk of the Court to enter judgment declaring the following:

    Plaintiff Atain Specialty Insurance Company owes no duty to defend or indemnify James Hodge d/b/a Riverbend Tree Service Commercial General Liability and Errors and Omissions policy no. CIP401312 the claims brought in *Bailey Watson v. James Hodge d/b/a Riverbend Tree Service*, Case No. 2021-L-339, Circuit Court for the Third Judicial Circuit, Madison County, Illinois.

**IT IS SO ORDERED.**
**Dated: February 13, 2023**

/s/ **J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**